# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>DIEGO CAMPESTRINI and CELL TECH ELECTRONICS INC.,<br><br>**Defendants**. | **Criminal No.** 13-280 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court are defendants Diego Campestrini and Cell Tech Electronics, Inc. ("Cell Tech")'s motion to transfer venue pursuant to Fed. R. Crim. P. 21(b) ("Rule 21(b)"). (Docket No. 19.) Having considered defendants' motion, the government's response, (Docket No. 22), and defendants' reply, (Docket No. 24), the Court **GRANTS** the transfer of venue to the United States District Court for the Southern District of Florida.

I.  Parties' Arguments

Defendants argue that their trial should be transferred to the Southern District of Florida pursuant to Rule 21(b) for the convenience of the parties and witnesses, and in the interest of justice.  They assert that both defendants are located in Doral, a suburb of Miami, Florida: Campestrini lives there with his wife and stepchild, and Cell Tech has one office — located in Doral. (Docket No. 19 at p. 5.)  They also claim that neither defendant has "ever had offices in or resided in Puerto Rico;" that all

defense witnesses reside in the Southern District of Florida; that a majority of the events in which they were allegedly involved occurred in Doral and Miami as well as Bogota, Colombia — not Puerto Rico; that most of the relevant documents and records involved in the case were maintained in Doral; that defendants' primary counsel is from Miami; that a trial in Puerto Rico will shut down Cell Tech, "a result that will be devastating to such a small, family-run business;" that defendants will incur large expenses in order to travel to and from Puerto Rico for trial, as well as pay for their counsel to do the same; that Puerto Rico is significantly less accessible for defendants than Miami; that the Southern District of Florida's docket favors transfer of the case from the District of Puerto Rico's "congested criminal dockets;" and that the alleged offenses in the indictment have little or no nexus to Puerto Rico or its citizens. Id. at pp. 5-12.

In opposition, the government emphasizes that venue is proper in Puerto Rico and disputes many of the defendants' contentions. The government claims that the alleged drug money proceeds deposited in an undercover FBI account were collected from various points throughout Puerto Rico and sent directly from Puerto Rico to Cell Tech's bank accounts; that numerous acts in furtherance of the conspiracy took place within Puerto Rico; that the transfer of the government's witnesses, evidence, and prosecuting team to Florida is more burdensome now "when substantial financial constraints exist;" that no need to travel for discovery purposes exists because discovery has been provided electronically; that the

estimated three-day trial will not financially ruin defendants because they "can afford to travel to Puerto Rico and retain[] local counsel;" that defendants retained local counsel in Puerto Rico to assist in pre-trial matters and at trial; that the number of criminal trials in Puerto Rico is less than that in the Southern District of Florida; and that the citizens of Puerto Rico have an interest in holding the trial in the District Court of Puerto Rico. (Docket No. 22 at pp. 7-15.)

**II. Discussion**

Upon a defendant's motion, the Court may transfer a proceeding to another district "for the convenience of the parties[,] . . . the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). In determining whether to grant a transfer motion pursuant to Rule 21(b), a court has broad discretionary power, but should consider: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendants' business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of place of trial; (9) the docket condition of each district or division involved; and (10) any other special element which might affect the transfer. Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964). "No one factor is likely to be dispositive, but all should be considered under the circumstances." United States v. Muratoski, 413 F. Supp. 2d 8, 9-10 (D.N.H. 2005).

     Neither party disputes that venue in Puerto Rico is plainly proper, given the fact that overt acts in furtherance of the conspiracy charged in Count 1 are alleged to have occurred in Puerto Rico. See, e.g. United States v. Santiago, 83 F.3d 20, 25 (1st Cir. 1996) ("[I]n a conspiracy case venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place, even if a particular coconspirator was not himself physically present in that district."); 18 U.S.C. § 3237(a) (2013) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). Although the government ordinarily enjoys broad limits to decide where to bring a conspiracy charge, the rules of criminal procedure require that the Court independently assess defendants' contention that the Southern District of Florida is the most "convenient" venue. See United States v. Acevedo-Vila, 2008 U.S. Dist. LEXIS 98566 (D.P.R. Dec. 4, 2008) (Barbadoro, J.).

     Weighing the relevant factors, it is clear that defendants will suffer greater inconvenience facing trial in Puerto Rico than in Florida. Most importantly, the defendants' residence and location in Florida, coupled with the expenses to be incurred and the disruption of Cell Tech's business, undoubtedly weigh in favor of transfer to Florida. Defendant Campestrini will likely incur significant traveling and lodging expenses for himself and for counsel in order to attend trial in Puerto Rico. See Acevedo-Vila,

2008 U.S. Dist. LEXIS 98566.  Were trial to be held in Miami, he need only commute 30 minutes to the courthouse and does not require housing.  (Docket No. 19 at p. 10.)  Moreover, Campestrini's wife, Ms. Neile Faria, provided a declaration stating that Cell Tech is a family-owned, small company with only five employees, and that she and her husband are solely responsible for the overall administration of the business.  (Docket No. 19-2.)  Were the case to proceed in Puerto Rico, they would be forced to shut down the business altogether in order to fly to Puerto Rico for trial.  If the case were transferred to Miami where the courthouse is more easily accessible, however, they could keep the company open and tend to business before and after trial each day.  Thus, the first, fifth, and sixth factors strongly favor transfer to the Southern District of Florida.

The location of possible witnesses in the more readily accessible venue of southern Florida also heavily weighs in favor of transfer.  Attached to defendants' motion are four declarations of potential witnesses, stating that it would be difficult for them to come to Puerto Rico to serve as character witnesses if trial is conducted in San Juan.  (Docket No. 19-1.)  To the contrary, were trial to be held in Florida — where the witnesses reside — they "would gladly be" character witnesses.  <u>Id.</u>  Although the government hypothesizes that it will call "a greater number of witnesses" who reside in Puerto Rico, it makes no showing to support that contention.  (<u>See</u> Docket No. 22 at pp. 9-10.)

Accordingly, the second and eighth factors weigh in favor of transfer.

The Court also agrees with defendants that the docket conditions of the District Court of Puerto Rico relative to that of the Southern District of Florida support transfer of the case. Although the government alleges to have calculated the number of trials per judge in the District Court of Puerto Rico to be less than that in the Southern District of Florida, the Court echoes the understanding that "the District Court of Puerto Rico has one of the most congested criminal dockets in the country in large part due to the high number of multi-defendant cases in Puerto Rico." See United States v. Farmer, Criminal No. 13-162, (Dominguez, J.) (Opinion & Order dated Aug. 26, 2013); see also United States v. Flores-Machicote, 706 F.3d 16, 22–24 (1st Cir. 2013) (detailing Puerto Rico's escalating murder rate and other local criminal trends). Certainly, the recent statistic that 1,867 criminal defendants were "commenced" in the District of Puerto Rico, with six active judges and two senior judges handling criminal trials, is greater than the statistic that 2,526 defendants were commenced in the Southern District of Florida, with 24 judges. See United States Courts, Caseload Statistics 2013, Table D-3 "Defendants Commenced, by Offense and District," http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/caseload-statistics-2013.aspx (last visited January 21, 2014); United States District Court for the District of Puerto Rico Website, Judges of the United States District Court,

http://www.prd.uscourts.gov/?q=judges-united-states-district-court (last visited January 21, 2014); United States District Court for the Southern District of Florida Website, Judge Information, http://www.flsd.uscourts.gov/?page_id=3551 (last visited January 21, 2014). Accordingly, the ninth factor also favors transfer.

The Court finds that the remaining factors neither weigh in favor of nor against transfer. The location of documents and records, for example, does not indicate a substantial balance of inconvenience. As the government points out, discovery has been provided electronically, so no traveling for discovery purposes is foreseen. (Docket No. 22 at pp. 11-12.) Similarly, the location of events likely to be in issue does not favor either location over the other. Both parties acknowledge that conspiratorial meetings allegedly took place in Florida and Colombia, but other acts in furtherance of the conspiracy — as well as the undercover FBI account — occurred and were located in Puerto Rico. (Docket No. 19 at pp. 7-8; Docket No. 22 at pp. 9-10.) Citizens in both Florida and Puerto Rico, therefore, have an interest in the case. Furthermore, defendants have retained local counsel in Puerto Rico; thus, the location of attorney Becerra's practice in Miami does not preclude defendants from receiving legal representation in Puerto Rico. Were the trial to proceed in Puerto Rico, defendants admittedly would have to ship trial preparation materials and accommodate counsel's travel and lodging. (Docket No. 19 at p. 10.) A trial in Florida, however, would saddle the government

with the same inconveniences. (Docket No. 22 at p. 8.) Accordingly, the third, fourth, seventh, and tenth factors do not favor venue in Florida over Puerto Rico.

## III. Conclusion

Because a trial in Florida would be manifestly more convenient to defendants than a trial in Puerto Rico, the Court **GRANTS** defendants' motion for transfer of venue to the United States District Court for the Southern District of Florida, (Docket No. 19).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 22, 2014.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
United States District Judge